STAPLETON *v.* CORNTHWAITE.

SALES—RESCISSION—FRAUD — EQUITY — CANCELLATION OF INSTRU-
MENTS.

On appeal from a decree setting aside a sale of a laundry
and canceling a note and mortgage given in payment
therefor, conclusions that the parties did not deal with
each other upon equal terms, defendant knowing he had
knowledge not possessed by plaintiff concerning the qual-
ity and condition of the machinery; that the circum-
stances required defendant to disclose the same; and that
the property was greatly overvalued and advantage taken
of plaintiff's want of knowledge and lack of experience,
*held*, supported by evidence, sustaining the decree of the
court below.

Appeal from Cass; Des Voignes, J. Submitted April
18, 1918. (Docket No. 118.) Decided June 3, 1918.

Bill by Thomas W. Stapleton against Arthur B.
Cornthwaite to set aside a sale and mortgage on the
ground of fraud. From a decree for plaintiff, defend-
ant appeals. Affirmed.

*Clarence M. Lyle,* for plaintiff.

*Chester E. Cone,* for defendant.

OSTRANDER, C. J. The trial court gave the following
opinion:

"This bill of complaint was filed to set aside a sale
and a mortgage given in consideration of the trans-
fer of property wherein defendant sold what is known
as the Cassopolis Steam Laundry and its equipment to
plaintiff for the sum of eleven hundred dollars. Pay-
ment for the same having been made by the plaintiff
giving a note secured by real estate mortgage on lot
number three in block one south, range two east, in
the village of Cassopolis, in the sum of seven hundred
dollars and giving back a mortgage on the laundry
and equipment purchased for the sum of four hundred
dollars.

"It is alleged by complainant that while he had worked in the laundry several months, he had no prior knowledge of the business, judgment or experience of the value of materials and equipments used in the conduct of the business.

"Defendant was many years the senior of plaintiff, had owned and operated this laundry and other laundries of a like character and was an experienced and capable business man, very efficient in the line of laundry work.

"The plaintiff is twenty-two years of age. Defendant knew that he was inexperienced in the laundry business, inexperienced in machinery and equipment and induced the plaintiff to buy the laundry and knowing that the laundry and its machinery equipment was worn out. That the machinery had been used for many years and its usefulness greatly impaired. The boiler, an old one, leaked, having been in use many years and practically worthless.

"The plaintiff, though working in the laundry for a time prior to the sale and up to the time of the sale did not know of these defects, defendant carefully concealing the knowledge he had of its worthlessness from plaintiff.

"The plaintiff took possession of the laundry and proceeded to conduct the business, but within a short time discovered the true condition of the machinery, was obliged to shut down and discontinue the work on account of its worthless condition, and shortly thereafter notified defendant that a fraud had been perpetrated upon him and thereupon tendered back to the said Arthur B. Cornthwaite, the defendant, the laundry plant with all its machinery and equipment, at the same time demanding from defendant the note and mortgage given to secure the purchase price thereof, the defendant refused and this bill was then filed.

"A careful consideration of the testimony in this record affirmatively approves plaintiff's condition, while defendant with some force argues and while the records show that the plaintiff worked for several months in this laundry and ought to have known the true condition as well as the defendant and that in the light of such employment he was as well aware

of its condition as the defendant and should have used his eyes, nevertheless the record discloses defendant is as already stated many years older than plaintiff and plaintiff is a mere boy in judgment. In view of the relations of these parties and his inability to properly judge and determine his rights in such a transaction, he was not able to cope with defendant in judgment, experience or foresight.

"The court could not avoid seeing during the trial, what was plain to all, that plaintiff was far below the average man in mental vigor and in ability to grasp business details and protecting himself in a transaction of this character. He mortgaged the only bit of property he possessed, and it had only been recently turned over to him by his guardian.

"Defendant is a shrewd, keen man of business experience, and, common regard for the rights of others, especially the rights of this boy, ought to have restrained him from attempting to make a sale of this character.

"Since the proofs were taken in this case and some ten days thereafter, the boiler, machinery and other apparatus of this laundry had been taken out from the place where they were installed and are a mere lot of used up material fit practically for the scrap pile only. This court has had an opportunity to examine in the open the boiler taken out and fully exposed. Many holes could be seen, the iron rotten and practically worthless, only for old iron.

"There was no adequate consideration for the note and mortgage given on lot No. 3 aforesaid. It was a fraud upon plaintiff and the note should be canceled and the mortgage released and discharged.

"The laundry machinery equipment returned to defendant.

"No costs or other damages to be awarded plaintiff, and a decree may be settled accordingly."

Pursuant thereto, a decree was entered. Appellant contends that the parties were competent to contract, that something tangible was sold and delivered, that a price or consideration was agreed to and paid, that no warranties were asked for or given, that the sale was

not in any respect executory but completed. This is true. It is true, also, that what was sold was not only certain machinery but a business, and the seller agreed not to engage in the business in the same community. The seller left the community, went to another State, and there purchased and operated a business. The buyer began work for the seller in the laundry in April, 1916. The last day of September, in the same year, he purchased the plant and business. It was not a large business. It was carried on in a rented building. Washings were done twice each week. Defendant had carried on the business for seven years.

Plaintiff expressly, and inferentially, charges that defendant defrauded him, and bases the charges largely upon the failure, or neglect, of defendant to acquaint him with the condition of the physical property which he sold to him, it being claimed that it was old, decrepit, and, except when in charge of one having mechanical ability, acquainted with its peculiarities, incapable of performing its functions. Plaintiff testifies that defendant told him the—

"machinery was in good condition; everything was running that needed running, and hadn't had much trouble with it, and he didn't see why it wouldn't continue running. * * * He stated to me that the boiler was new six years ago. He said the boiler would hold out as long as I ever wanted one."

On cross-examination he testified that defendant told him that "perhaps it would last as long as" he wanted a boiler. As to the other machinery he says defendant said:

"All working; wasn't so much spoken of that; because I told him as to the boiler, I didn't know anything about the boiler and the steam engine; practically, knew nothing; the only reason I hated to buy it, because I knew nothing of them; was afraid of them in fact, and he mentioned that one was running; he

hadn't had much trouble and ought to continue to run."

Asked what was said about the burner, plaintiff testified:

"Well, the burner was one that he had trouble with; that is the time it was choked up with carbon and had been out down there, and Richard Bryant and the Hayden plumbing department cleared it up and brought it back. I always cleaned it out and I took that down and cleaned it and brought it back and didn't do any good then."

Plaintiff testified with respect to his knowledge and experience of machinery and what he knew about the particular machinery. He said:

"I went to work in the City Steam Laundry in April, 1916. I gathered and delivered laundry and rubbed collars and shirts. I gathered laundry on Monday mornings. It probably took about one day in the week to gather and delivery laundry. I worked on collars polishing them. I shaped collars and tied up the goods and delivered them. That is practically all there was of it. That is what I did when working for Mr. Cornthwaite. Arthur B. Cornthwaite owned the business, was in charge of and operating it. He looked after the machinery and after the management of the business while I was there. I only operated the collar polisher. That isn't in the machinery room. I built fires in the boiler from the time I first commenced to work there. I started the fires in the morning. We had fire in the boiler only two or three days out of the week. I looked after the fire in the boiler until Mr. Cornthwaite arrived when he took charge of it. I had nothing more to do with the boiler aside from starting the fire. I have never had any experience in running gas engines or steam engines or a boiler or in operating an extractor or washing machine. I did not do this work while working for Mr. Cornthwaite. I have never worked around machinery or any other laundry. All the experience I have had in the laundry business was what I acquired in the laundry in question here at Cassopolis from April up to the time I bought it."

He attempted to operate the machinery after his purchase, having a man to "do the boiler work." That work he "watched to see the man did as far as I knew."

When some of the machinery failed, plaintiff sought to have repairs made, discarded some of it, and ordered new machinery. Some new things were installed, some were not. Plaintiff bought a new washer in about two weeks after he took possession. This he proposed to do—intended to do—when he bought the business. A new extractor was among the things ordered by him as well as a new collar shaper. The washing machine and extractor were installed November 1, 1916. Plaintiff again started the machinery and soon had a leaky boiler. On November 14, 1916, he wrote to defendant, this letter evidently not being the first of the correspondence. The contents of the letter were:

"Friend Cornthwaite,

"Your letter received. It seems you do not exactly understand the trouble here. Well first the small tub and extractor went bang. The pulley on the extractor wore in two. Caused by brace rod on brake. It had been wearing for some time. Would not have happened if brake band had been kept full. Next the burner for body iron and collar shaper quit work. It is done for I guess, at least no one here can fix it. I have a new one here in the express office. C. O. D. $22.50 looks like too much. Remember what you paid for yours? Next the boiler went out. It is no fault of any one. Only the mfg. A hole has rotted right where the rib is in the middle rather low down. Seems to be doing the same stunt all the way round. It is simply a rotten piece of metal. There are just two ways out. Patch this boiler—? Don't think it would pay. Buy a new one—? Too much money owing to circumstances.

                    "Yours truly,

                              "STAPLETON.

"Am sending shirts and collars
Dowagiac (40 per cent.)"

The business, not conducted by operating the ma-

chinery, but the laundry business, plaintiff carried on until late in December. There is testimony tending to prove that the property and business were sold to plaintiff for too large a sum—that they were not worth $1,100.

It is evident from the opinion of the trial court that conclusion was rested upon something which is not before this court. While the claim was made and the issues fairly tendered that defendant was experienced and plaintiff inexperienced, in business affairs, that defendant knew and plaintiff did not know the condition of the property sold, that defendant was mature and the plaintiff immature in years, it is not claimed in the bill (and no such issue appears to have been tendered at the trial) that plaintiff is "far below the average man in mental vigor and in ability to grasp business details," and what was disclosed upon this subject to the observation of the trial court we cannot reexamine; nor can this court have the benefit of the observation of the particular property made by the trial judge after the proofs were closed. We can review, and have reviewed, the testimony, and that is persuasive of at least two conclusions, one that defendant was not guided by the ethical notions of conduct which some would think ought to have prevented him from selling the property to a boy in his employ unless certain that the boy was properly advised and fully understood the hazard of the purchase, the other that in rescinding the bargain and bringing this suit the young man, plaintiff, is seeking indemnity for losses growing out of an experiment in business which he freely, if not very intelligently, made. Beyond this, the testimony fairly supports—requires—certain other conclusions, which are (1) that these parties did not deal with each other upon equal terms, defendant knowing when they made their bargain that plaintiff was not in possession of the knowledge he himself

possessed concerning the quality and condition of the machinery — knowledge which, if plaintiff had possessed it, ought to and probably would affect his judgment and conclusion; (2) circumstances required defendant, the seller, to speak, to disclose; (3) the property was greatly overvalued, advantage was taken by defendant of plaintiff's want of knowledge and his lack of experience which if possessed would have discovered to him what he needed to know to place the parties upon an equal footing.

These conclusions sustain the decree, and it is affirmed, with costs to appellee.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.